WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie Guerrero,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-22-00165-TUC-LCK<br><br>**ORDER** |

  Plaintiff Valerie Guerrero filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Guerrero's Opening Brief, Defendant's Responsive Brief, and Guerrero's Reply. (Docs. 20, 26, 27.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 12.) Based on the pleadings and the Administrative Record, the Court denies the appeal.

**FACTUAL AND PROCEDURAL HISTORY**

  In April 2019, Guerrero filed an application for disability insurance benefits (DIB) and an application for supplemental security income (SSI). (Administrative Record (AR) 244, 246.) She alleged disability beginning on January 1, 2017, due to depression, anxiety, PTSD, back pain, low back arthritis, three bulging discs, high blood pressure, diverticulitis, irritable bowel syndrome (IBS), and migraines. (AR 280.) At the hearing, counsel clarified that Guerrero's intended onset date was January 2018, and the 2017 date

stated in the application was an error. (AR 47, 240.) Guerrero was born in October 1973, making her 44 years of age at her alleged onset date.

Guerrero's applications were denied initially and upon reconsideration. (AR 67-154.) She requested review and appeared with counsel at a telephonic hearing before an Administrative Law Judge (ALJ) on February 17, 2021. (AR 33-62.) At the hearing, Guerrero testified that she previously worked as a sales associate at Bon Worth and as a warehouse worker for TJ Maxx. (AR 39-42.) Before that, she worked as a cashier for Subway. (AR 42-43.) She lived with her brother, and he and her father paid the bills. (AR 54-55.)

On April 12, 2021, the ALJ found Guerrero had several severe impairments: depression, low average intellect, posttraumatic stress disorder (PTSD), obesity, and right foraminal narrowing at L5-S1. (AR 16.) He found Guerrero had the residual functional capacity (RFC) to perform light work with limitation to occasional balancing, stooping, kneeling, crouching, and climbing ramps and stairs; never crawling or climbing ladders, ropes, or scaffolds; avoiding concentrated exposure to extreme cold or heat, wetness, humidity, vibration, and hazards; no public contact; and only occasional contact with coworkers and supervisors after a training period of 30 days or less. (AR 19-20.) The ALJ concluded at Step Five, based on the testimony of a vocational expert, that Guerrero was not disabled because she could work as a sorter, sub-assembler, or garment folder. (AR 26-27.) The Appeals Council denied Guerrero's request for review on March 18, 2022, making the decision of the ALJ the final decision of the Commissioner. (AR 1.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Guerrero alleges the ALJ committed two errors: (1) the ALJ improperly weighed the opinion of an examining psychologist; and (2) the ALJ failed to provide clear and

convincing reasons for rejecting her symptom testimony. Guerrero only challenges the ALJ's analysis of her psychological limitations. (Doc. 20.) This order, therefore, focuses on the medical record solely as it relates to her mental impairments.

### Opinion of Examining Psychologist, Sarah Burger

The regulations governing cases filed after March 27, 2017, such as this one, provide that an ALJ will consider all medical opinions and, at a minimum, articulate how the ALJ evaluated the opinions' supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b), 416.920c(a) & (b). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). "The more relevant the objective medical evidence and supporting explanations presented and the more consistent with evidence from other sources, the more persuasive a medical opinion or prior finding." *Machelle H. v. Kijakazi*, No. 1:20-CV-00357-CWD, 2021 WL 4342313, at *7 (D. Idaho Sept. 22, 2021). "In sum, the [ALJ] must explain his reasoning and specifically address how he considered the supportability and consistency of the opinion, and his reasoning must be free from legal error and supported by substantial evidence." *Id.*

Dr. Burger evaluated Guerrero on April 12, 2018, for the purpose of determining her eligibility for vocational rehabilitation services. (AR 417.) Guerrero stated that she generally avoided driving because it caused her a lot of stress. (AR 417.) Her mood was dysthymic and her affect flat, she almost appeared angry and cried frequently. (AR 418.) She was cooperative but expressed frustration and discontent nonverbally, including with regular loud sighs. (*Id.*) Her discourse was fluent, speech monotone, attention reasonable, and effort consistent. (*Id.*) At that time, Guerrero was not participating in any behavioral health services and was not taking any medication to alleviate psychological symptoms. (*Id.*) Guerrero reported being fired from her last job for poor performance, but she found her termination unjust because she lacked adequate training. (AR 420.) She had walked out on a prior job due to conflict with a colleague. (*Id.*) Guerrero reported a substantial

decrease in sociability and avoidance of other people. (AR 421.) She experienced difficulty sleeping with nightmares/flashbacks. (*Id.*)

Guerrero's IQ was 85, which was low average. (AR 422.) Her academic skill set was borderline with a 5th grade equivalency. (*Id.*) Her auditory working memory was average. (AR 423.) Testing established only 50% certainty that Guerrero did not have significant attention problems. (*Id.*) She scored highly on a test for organic impairment. (AR 423-24.) She tested in the severe range for symptoms of depression and anxiety, and ratings indicated "prominent and uncontrolled emotional disturbance." (AR 424.) Dr. Burger determined Guerrero had a reasonable grasp of social skills and conventions. (AR 425.) Her working memory, sequencing, and selective attention were within normal limits. (*Id.*) The psychologist diagnosed PTSD; generalized anxiety disorder, severe; and major depressive disorder, recurrent, severe. (AR 426.) Dr. Burger concluded that Guerrero was "presently highly unlikely to find success in obtaining or maintaining gainful employment given the intensity of her psychiatric symptoms." (AR 425.) She further opined that "Guerrero [was] likely to perform best in a highly structured setting, with recommended maximization of routine. Memory performance will be best if new learning takes place in structured settings, and if regular use of memory cues is employed." (AR 426.)

The ALJ found Dr. Burger's opinion not persuasive because it was inconsistent with her own examination and the medical evidence of record. (AR 24.) The ALJ stated:

> [I]n September of 2018, she was alert and oriented times four, her alertness was normal, eye contact was good, and her speech quantity was normal with normal rate and normal amplitude. She was cooperative, her thought and associations were logical, stream of thought was unremarkable, and she reported no delusions or hallucinations. The examiner described her mood as "labile" her affect as "neutral" and fund of knowledge, memory, insight, judgment, and concentration as "fair." More telling, her mental status examinations were essentially normal throughout the record.

(*Id.* (citing AR 377).) Despite the ALJ's finding of inconsistency with the psychologist's examination, he did not cite any conflicts between Dr. Burger's opinion and her examination of Guerrero. In a separate (earlier) portion of the ALJ's decision, he noted that Dr. Burger found Guerrero fully oriented to person, place, and time, but with a

depressed mood and tearful affect. (AR 21.) Nothing in those findings is inconsistent with the psychologist's opinion. Defendant argues to the contrary, relying upon the September 2018 findings cited by the ALJ. (Doc. 26 at 8 (citing AR 24).) Those September findings, however, were from a mental status examination conducted by NP Yanina Shames five months after the evaluation by Dr. Burger. While relevant to an evaluation of whether Dr. Burger's findings were consistent with the other medical evidence of record, they are irrelevant to whether her opinion was consistent with her examination. There is not substantial evidence to support the ALJ's finding that Dr. Burger's opinion was inconsistent with her examination of Guerrero.

Next, the Court looks at whether there is substantial evidence to support the ALJ's finding that Dr. Burger's opinions were inconsistent with the medical evidence of record. As quoted above, the ALJ focused in particular on a September 2018 psychological evaluation. At that time, NP Shames documented Guerrero with a normal mental status exam, with the exception of a labile mood. Similarly, the majority of the mental status exams documented in the record found Guerrero to be alert and oriented with normal speech, good eye contact, logical thought, and fair or intact memory, insight, judgment, impulse control, and concentration/attention. (AR 383, 387, 410, 433, 449, 454, 459-60, 503, 532, 628, 637, 653, 703, 721, 727, 742, 753, 757, 761,766, 774, 782, 795, 808, 814, 827, 838, 845, 853, 861, 866, 888, 902, 915, 927, 942-43, 952-53, 967-68, 971, 981, 987, 993.) At sporadic appointments Guerrero exhibited a sad, depressed, or anxious mood, she was periodically teary, and she had minimal impairment in judgment or insight on occasion. (AR 410, 477, 490, 492, 514, 532, 628, 646, 766, 782, 793, 889, 902, 927, 971, 987, 993.) Because most of the mental status exam results were within normal limits, the Court finds substantial evidence supports the ALJ's finding that Dr. Burger's opinion was inconsistent with the medical evidence of record. *See Woods*, 32 F.4th at 792-93 (finding the opinion of the examining psychologist "unpersuasive because it was inconsistent with the overall treating notes and mental status exams in the record.").

Guerrero contends the ALJ erred in discounting Dr. Burger's opinion while finding Dr. Rohen's opinion persuasive when they were both formulated after one examination. The ALJ did not discount Dr. Burger's opinion because it was a one-time examination, although he mentioned that fact. (AR 24.) Guerrero argues that Dr. Burger's opinion was just as well supported and consistent as Dr. Rohen's opinion. (Doc. 20 at 14.) Therefore, she contends the ALJ was required to examine additional statutory factors pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. The statute provides that, when an ALJ finds two medical opinions on the same issue "are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ will set forth how he considered the additional factors of relationship with the claimant, specialization, and other information such as the source's familiarity with the record and knowledge of the disability program. 20 C.F.R. §§ 404.1520c(b)(3), (c)(3)-(5), 416.920c(b)(3), (c)(3)-(5). This provision was not relevant to the ALJ's decision because he did not find the opinions of Drs. Burger and Rohen were equally well supported and consistent with the record. To the contrary, he found Dr. Burger's opinion was not well supported or consistent, but determined that Dr. Rohen's opinion was consistent with the record and her examination.

Although Guerrero asserts that Dr. Rohen's opinion is superior to that of Dr. Burger, that is not relevant to this Court's analysis. The Court evaluates solely whether the opinion of the ALJ is supported by substantial evidence and free from legal error. The Court concludes that it is, because there is substantial evidence to support the ALJ's finding that Dr. Burger's opinion was inconsistent with the medical evidence of record. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.").

**Symptom Testimony**

Guerrero argues that the ALJ failed to articulate clear and convincing reasons for discounting her subjective symptom testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*,

481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 16-3p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ did not make an explicit finding on this point. However, because the ALJ moved to the second portion of the test, presumably he found in the affirmative as to the first step of the analysis. Defendant does not contend otherwise. Next, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins*, 466 F.3d at 883; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (holding an ALJ can reject claimant testimony if he finds evidence of malingering). The ALJ did not make a finding of malingering. Therefore, to support his discounting of Guerrero's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Robbins*, 466 F.3d at 883.

In a May 2019 function report, Guerrero reported difficulty sitting, standing, walking, and bending due to back pain. (AR 309.) She stated that migraines impaired her ability to do any activity, depression impeded her motivation, and anxiety and PTSD made it difficult for her to be around people or loud noises. (*Id.*) She reported spending 90% of her time in bed, watching TV and napping. (AR 310, 315.) She experienced

difficulty with sleep (AR 310) and drowsiness from Seroquel (AR 316). She provided care for her dog, but her personal care was challenging due to pain. (AR 310, 311.) She regularly prepared her own simple meals, which took only a few minutes. (*Id.*) She experienced frustration sometimes in dealing with others and had lost a job due to a disagreement with a boss. (AR 312, 313.) In addition to the limitations discussed above, Guerrero identified the following limitations: lifting, squatting, kneeling, stair climbing, seeing, memory, completing tasks, and concentration. (AR 312.) The mental issues she attributed to PTSD and anxiety. (*Id.*) She reported an ability to walk about one block before needing a thirty-minute rest. (*Id.*) She could pay attention only for short periods and was easily distracted. (*Id.*) She indicated that she did not follow written instructions well but did better with verbal directions. (*Id.*) She stated that she did not handle stress or changes in routine well. (AR 313.) She reported doing laundry once or twice per month over several hours with breaks. (AR 314.) She also did dishes in small amounts at a time over the course of time, up to two days. (*Id.*) She did not sweep or mop. (*Id.*) She was able to drive and go out alone. (*Id.*) She would shop with her brother once a month. (*Id.*) The only place she went regularly was to appointments, and she rarely spent time with others. (AR 315.)

At the February 2021 hearing, Guerrero testified that she tried to take the GED test and was enrolled at Pima Community College, but she found it hard to focus and concentrate due to her anxiety when around a lot of people. (AR 37.) She testified that she stopped working after re-injuring her back as a passenger in a car that made a hard landing. (AR 38.) She stated that in the prior six months she rarely left the house, and her brother brought home the things she needed. (AR 44.) She went out only for appointments but rescheduled a lot of them due to bad anxiety. (AR 44, 51-52.) She attended some appointments over the phone and drove herself to in-person appointments if a family member could not transport her. (AR 45.) Guerrero affirmed that she still experienced anxiety and panic attacks and was being treated for them. (AR 48.) When her anxiety flared up, she would get sweaty, become nauseous, vomit, lose control and freeze

up, and feel a panic attack coming. (AR 49-50.) She reported experiencing those symptoms any time she needed to go somewhere. (AR 50.) To prepare for outings she would take medication and wait until she calmed. (*Id.*) Depression also contributed to her staying home, keeping away from people, and cancelling appointments. (AR 52.) She hardly interacted with people, even those she knew, and experienced a lot of anxiety due to COVID-19. (AR 52-53.) Guerrero stated that she spent the majority of her time sleeping or watching TV in bed. (AR 54.)

The ALJ stated, generally, "I find no persuasive corroborating evidence for duration, frequency, intensity of symptoms and limitations alleged as disabling." (AR 20.) He stated that the objective evidence was not "reasonably expected to result in the degree of limitation alleged." (*Id.*) He found that conservative treatment had been recommended and followed, which indicated her symptoms were not as limiting as she stated. (*Id.*) And the ALJ noted that she "reported no trouble understanding, following instructions, or getting along with others." (AR 20-21.) The ALJ also noted that:

> MER [medical evidence of record] shows a history and current ongoing symptoms and treatment for PTSD and depression with a history of early and recurrent trauma from age 4. However, she maintained a longitudinal work history despite these allegations and work history included a managerial position. Although the claimant indicated that she was terminated in January of 2019 "for not doing her new job description properly," she alleged that she "was not well trained" for said position.

(AR 21.) The ALJ included a final comment that treatment notes reflected improvement in Guerrero's symptoms.[1] (AR 25.)

The Court first assesses whether there is substantial evidence to support the ALJ's findings that Guerrero required and received only conservative treatment and she

---

[1] Defendant argues that the ALJ also discounted Guerrero's symptom testimony based on the extent of her activities of daily living, citing to the ALJ's discussion of the Paragraph B criteria, which occurred at Step Three before the RFC assessment. (Doc. 26 at 12 (citing AR 18-19).) Defendant cites *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022), for the proposition that a court should look at the entirety of an ALJ's decision when evaluating his finding that a claimant's testimony conflicts with her activities of daily living. *Kaufmann* has no application to the ALJ's decision, here, because the ALJ did not make a finding of inconsistency between Guerrero's testimony and her activities of daily living. The Court is precluded from affirming based on a ground upon which the ALJ did not rely. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

exhibited improvement in her mental health symptoms. (AR 20, 25.) Guerrero has not been admitted to the hospital based on her mental health and was not given an SMI (Serious Mental Illness) designation for purposes of obtaining services. (AR 645, 941.) As discussed in the prior subsection, Guerrero's mental status exams were mostly normal, with intermittent examinations revealing a sad, depressed, or anxious mood, crying, and/or minimal impairment in judgment or insight. (AR 383, 387, 410, 433, 449, 454, 459-60, 477, 490, 492, 503, 514, 532, 628, 637, 646, 653, 703, 721, 727, 742, 753, 757, 761,766, 774, 782, 793, 795, 808, 814, 827, 838, 845, 853, 861, 866, 888, 889, 902, 915, 927, 942-43, 952-53, 967-68, 971, 981, 987, 993.) At the time of her alleged onset date, Guerrero was not receiving treatment from any mental health professionals. In September 2018, she attended a psychiatric evaluation and was prescribed psychiatric medication. (AR 375-78.) She participated in an intake with a new mental health provider in January 2019 (AR 526-40) and reported not taking the medications because she did "not know how the medications will affect her or how the medication[sic] will interact with each other" (AR 528). In other words, for the first year of the period in which she alleged disability, Guerrero did not participate in treatment for her mental health impairments.

Guerrero attended four mental health appointments in 2019. (AR 501-03, 526-40, 626-68, 986-87.) There are records from five therapy appointments between January and May 2019. (AR 477, 490, 498, 514, 629.) In February, she was prescribed new psychiatric medications. (AR 410-11.) Through April 2019, her medication was not helping her sleep, and her depression worsened in connection with the end of a long-term relationship. (AR 484, 490, 492, 498, 501, 506-08.) She had some improvement in May, but she stopped all of her medications for a period of weeks in the month of July. (AR 924, 986-87.) In December 2019, she reported to her primary care nurse practitioner that her mental health was stable. (AR 752.) To summarize 2019, Guerrero participated in therapy for part of the year and attended quarterly medication appointments and, over time, she improved while on medication.

In March 2020, her primary care provider found her anxiety disorder to be uncontrolled but, in May 2020, she was doing better, and medication had improved her anxiety. (AR 770, 776, 951.) In June, July, and August 2020, her providers noted improvement in anxiety and depression. (AR 784, 913-15, 964-65, 980-82.) She had increased anxiety in October 2020 after being involved in a car accident. (AR 782, 887.) In December 2020, her treating nurse practitioner found her anxiety had increased due to COVID-19 and was uncontrolled. (AR 764-66.) Although the administrative record does not contain therapy records after May 2019, records from other providers reference therapy occurring in February 2020, June to August 2020, and February 2021. (AR 897, 913, 942, 964, 982.) In February 2021, Guerrero acknowledged that she had missed numerous therapy appointments in the prior year due to "low energy, low drive, low motivation, [and] pain" (AR 942), but she had attended seven appointments for medication management since January 2020 (AR 887-89, 897-907, 913-15, 951-53, 964-68, 971-74, 980-82, 991-96). She reported that her anxiety had been worse in the past year due to COVID-19 and the October car accident. (AR 938, 942.) However, despite experiencing anxiety, Guerrero declined an increase in medication and indicated she was stable. (AR 974.) In sum, Guerrero experienced anxiety over COVID-19, and a car accident late in 2020, but generally was improved throughout the middle of the year and reported being stable at the end of the year as well.

Guerrero began mental health treatment in 2019 consisting of medication review several times per year and somewhat inconsistent therapy. Other than encouraging Guerrero to attend therapy more regularly, no further treatment was suggested. Therefore, there is substantial evidence to support the ALJ's finding that Guerrero's mental health impairments were treated conservatively. Although Guerrero's symptoms waxed and waned a bit, there is substantial evidence to support the ALJ's finding that, overall, she experienced improvement in her symptoms through treatment. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."). These are both clear and

convincing reasons for the ALJ to have discounted her symptom testimony. *Shultes v. Berryhill*, 758 F. App'x 589, 592-93 (9th Cir. 2018) (upholding rejection of claimant's symptom testimony based on evidence of improvement in mental health symptoms with treatment) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (examining improvement in response to conservative treatment)); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (finding conservative treatment a basis to discount claimant's testimony on the severity of an impairment) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (the effectiveness of medication and treatment are relevant to the evaluation of a claimant's alleged symptoms).

The ALJ also found that the medical evidence of record did not support Guerrero's allegations of disabling mental impairments. As discussed more extensively in the section regarding Dr. Burger's opinion, the ALJ relied upon the fact that Guerrero's mental status exams were normal. Although there were limited abnormal findings, mental health providers and providers from a variety of other specialties generally found Guerrero to be cooperative, and alert and oriented with normal speech, good eye contact, logical thought, and fair or intact memory, insight, judgment, impulse control, and concentration/attention. (AR 383, 387, 410, 433, 449, 454, 459-60, 503, 532, 628, 637, 653, 703, 721, 727, 742, 753, 757, 761,766, 774, 782, 795, 808, 814, 827, 838, 845, 853, 861, 866, 888, 902, 915, 927, 942-43, 952-53, 967-68, 971, 981, 987, 993.) Thus, the Court finds substantial evidence supports the ALJ's finding that the medical evidence of record was inconsistent with Guerrero's symptom testimony of disabling limitations. This was a clear and convincing reason to discount her symptom testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (The claimant's subjective testimony of disability due to anxiety was discounted in part due to examination records that the claimant was "alert and oriented, maintained good eye contact, did not appear excessively anxious, spoke coherently and fluently, smiled appropriately, and was congenial."), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.1502(a).

Because the Court has identified three clear and convincing reasons upon which the ALJ relied, all of which are supported by substantial evidence, the Court does not evaluate the other rationales provided by the ALJ.

**CONCLUSION**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). The Court concludes the ALJ did not err as to the claims raised by Plaintiff. Therefore, Plaintiff is not entitled to relief and the appeal is denied.

Accordingly,

**IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court shall enter judgment.

Dated this 22nd day of September, 2023.

*Lynnette C. Kimmins*
Honorable Lynnette C. Kimmins
United States Magistrate Judge